# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILAN LIPSTEIN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>20X HOSPITALITY LLC d/b/a SPICY MOON, JUNE KWAN, in both her individual and professional capacities, JOANNA AVERY, in both her individual and professional capacities, and YIDI MAO a/k/a KENNY MAO, in both his individual and professional capacities,<br><br>Defendants. | Civil Action No.: 22-cv-4812 (VSB)(JW)<br><br>**CLASS AND COLLECTIVE ACTION SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Milan Lipstein ("Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants 20X Hospitality LLC d/b/a Spicy Moon ("Spicy Moon" or the "Restaurant"), June Kwan ("Kwan"), Joanna Avery ("Avery"), and Yidi Mao a/k/a Kenny Mao ("Mao") (together, "Defendants"):

## NATURE OF THE CLAIMS

1.      On a daily basis, Mao, the Executive Head Chef at Spicy Moon and Plaintiff's supervisor, sexually assaulted Plaintiff, including by grabbing his buttocks and placing his fingers near Plaintiff's rectum while making explicit threats to rape him.

2.      Mao also threatened to kill Plaintiff on several occasions, and at one point charged at him with a closed fist before being physically restrained by a server.

3.      Mao's murderous rage was perhaps motivated, at least in part, by deep-rooted antisemitism, which revealed itself through regular abhorrent comments and taunts based on

Plaintiff's Jewish heritage and faith—such as Mao's performing a Nazi salute while yelling "Heil Hitler" each time Plaintiff walked by.

4.      Deeply traumatized and fearful for his life, Plaintiff repeatedly complained to Kwan, the Owner of Spicy Moon, and Avery, Spicy Moon's General Manager, who each time assured Plaintiff that Mao's conduct would not be tolerated.

5.      However, these were nothing more than hollow promises.

6.      Spicy Moon refused to take action even as Mao's menacing conduct continued to escalate, thereby giving him license to continue assaulting and harassing Plaintiff without fear of repercussion.

7.      The Restaurant ultimately fired Plaintiff just four days after his most recent protected complaint, thus eliminating any façade of compassion or supposed concern for his safety.

8.      In the end, Spicy Moon and its management did not care that Plaintiff was being harassed and threatened.

9.      They just wanted him to stop complaining about it.

10.     Defendants have also engaged in a common, willful, and deliberate policy and practice of failing to compensate Plaintiff and others similarly situated minimum and overtime wages.

11.     Additionally, Defendants have denied Plaintiff and others similarly situated Spread of Hours pay for shifts of 10 hours or more.

12.     Further, Defendants have failed to pay Plaintiff and others similarly situated all wages owed on their regularly scheduled paydays.

13.     Defendants have also consistently failed to furnish Plaintiff and others similarly situated with Notices of Pay Rate and accurate wage statements, as required by law.

14.     The horrific discrimination and retaliation that Defendants committed against Plaintiff violates, *inter alia*: (i) Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (ii) the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL") and (iii) the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").

15.     Plaintiff brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated employees who were or are part of the proposed FLSA Collective (defined *infra* ¶ 159) at any time during the full statute of limitations period.

16.     Plaintiff also brings claims against under the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated employees who were or are part of the proposed Class (defined *infra* ¶ 169) and Subclass (defined *infra* ¶ 171) at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

17.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's, the putative FLSA Collective's, and the putative Class's rights under the FLSA.

18.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's, the putative FLSA Collective's, and the putative Class's related claims arising under State law.

19.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

**ADMINISTRATIVE PREREQUISITES**

20.     On June 17, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination and retaliation in violation of Title VII.

21.     Plaintiff received a Notice of Right to Sue from the EEOC on June 24, 2022.

22.     On August 8, 2022, within 90 days after he received his Notice of Right to Sue, Plaintiff filed an Amended Complaint asserting claims under Title VII.

23.     Any and all other prerequisites to the filing of this action have been met.

**PARTIES**

A.     **Plaintiff Milan Lipstein**

24.     Plaintiff is a resident of the State of New York and was employed by Defendants from on or around January 5, 2021 through on or around November 8, 2021.

25.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

B.     **Defendant 20X Hospitality LLC d/b/a Spicy Moon**

26.     Spicy Moon is a foreign limited liability corporation that operates as a restaurant.

27.     At all relevant times, Spicy Moon controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

28.     At all relevant times, Spicy Moon established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated,

including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

29.     At all relevant times, Spicy Moon maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

30.     At all relevant times, Spicy Moon was an "employer" within the meaning of all relevant statutes and regulations.

**C.     Defendant June Kwan**

31.     Kwan is the owner of Spicy Moon and a resident of the State of New York.

32.     From in or around January 2021 through the present, Kwan controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

33.     From in or around September 2021 through the present, Kwan established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

34.     From in or around September 2021 through the present, Kwan maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

35.     From in or around September 2021 through the present, Kwan was an "employer" within the meaning of all relevant statutes and regulations.

**D.     Defendant Joanna Avery**

36.     Avery is the General Manager of Spicy Moon and a resident of the State of New York.

37.     From in or around September 2021 through the present, Avery controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

5

38.     From in or around September 2021 through the present, Avery established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

39.     From in or around September 2021 through the present, Avery maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

40.     From in or around September 2021 through the present, Avery was an "employer" within the meaning of all relevant statutes and regulations.

**E.      Defendant Yidi Mao**

41.     Mao is the Executive Head Chef at Spicy Moon and a resident of the State of New York.

42.     From in or around September 2021 through the present, Mao controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

43.     From in or around September 2021 through the present, Mao established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

44.     From in or around September 2021 through the present, Mao maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

45.     From in or around September 2021 through the present, Mao was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.**     **Background**

46.     Prior to joining Spicy Moon, Plaintiff worked as a Chef at various restaurants across New York City over the course of eight years.

47.     Given his substantial experience, Plaintiff was offered the Executive Head Chef position and agreed to join the Restaurant on January 5, 2021.

48.     In this role, Kwan explained to Plaintiff that he was responsible for, *inter alia*, creating dishes for Spicy Moon's menu, managing the Restaurant's kitchen staff, preparing dishes for customers, and maintaining the Restaurant's inventory.

49.     While Plaintiff performed the above-referenced tasks during his time working as Executive Head Chef, Kwan and Avery were jointly responsible for the same tasks, in addition to myriad other job duties Kwan and Avery maintained as owner and General Manager of Spicy Moon, respectively.

50.     Plaintiff quickly established himself as an asset and essential member of Spicy Moon's kitchen staff.

51.     By way of example only, he created several dishes that remain among the best sellers on Spicy Moon's menu and helped generate significant social media engagement to promote the Restaurant.

52.     Further, Plaintiff brought not only skill and expertise, but also hard work and dedication.

53.     Indeed, he worked seven days per week, often including 16- to 18-hour days.

54.     Throughout his employment, Plaintiff typically worked Sunday through Saturday, from approximately 10:00 a.m. until approximately 4:00 a.m.

55.     Plaintiff generally worked 112 to 126 hours per week, for an average of approximately 119 hours per week.

56.     Plaintiff also frequently paid for supplies, ingredients, and hardware out of pocket.

57.     While Spicy Moon was supposed to reimburse Plaintiff for these expenses, the Restaurant's current management almost always failed to do so.

58.     Nevertheless, Plaintiff continued to dedicate himself to his work and Spicy Moon's success, as evidenced by the consistent positive feedback he received from the Restaurant's management.

59.     Defendants employ several back-of-house employees, including, *inter alia*, Line Chefs, Preparation Cooks, and Dish Washers ("Back-of-House Employees").

60.     To the extent not specifically listed above, "Back-of-House Employees" includes all other Spicy Moon employees who were not paid tips, but excludes the Executive Head Chef, owners, and management.

61.     Plaintiff was initially hired as Executive Head Chef.

62.     In September 2021, Nick Kwak, Spicy Moon's former General Manager and minority owner, hired Mao as co-Executive Chef alongside Plaintiff.

63.     Soon thereafter, Kwan became the sole owner of Spicy Moon and promoted Mao to be the sole Executive Head Chef, after which Plaintiff was assigned to the role of Preparation Cook and reported to Mao until he was terminated on November 8, 2021.

64.     Indeed, immediately after being promoted, Mao assumed responsibility over Spicy Moon's menu, managed the Restaurant's kitchen staff, and took over all decision-making responsibilities in Spicy Moon's kitchen.

65.     As a Preparation Cook, Plaintiff's job consisted of preparing food for customers at Mao's direction, along with such other tasks as Mao instructed him to perform.

66.     From in or around September 2021 through on or around November 8, 2021, Defendants directed every aspect of Plaintiff's work at Spicy Moon.

**B.      Sexual Harassment, Assault, Threats, and Antisemitic Discrimination against Plaintiff**

67.     Almost immediately, Mao began physically assaulting and sexually harassing Plaintiff.

68.     Further, Mao subjected Plaintiff to a regular onslaught of discriminatory remarks about his Jewish heritage and faith.

69.     It would be impossible to list all of the harassment and discrimination Plaintiff was forced to endure at the hands of Mao.

70.     Accordingly, we summarize a few examples of Mao's most egregious and antisemitic conduct below.

71.     Again, we must stress that the below is provided by way of example only and should in no way be construed as an exhaustive accounting of Mao's reprehensible acts.

72.     On several occasions, Mao smacked and grabbed Plaintiff's buttocks and placed his fingers near his rectum while making comments such as "Oh, fuck, I love this," "After work I am going to fuck you," and "You need to get ready for me."

73.     On numerous occasions, Mao grabbed Plaintiff's chest, squeezed his pectoral muscles together, and made comments about Plaintiff gaining weight.

74.     Mao also regularly subjected Plaintiff to countless other inappropriate sexual comments, including telling Plaintiff "You love Chinese cock," "Chinese men's penises are better than Jewish men's penises," and "Chinese men's penises are number 1."

75.     On a daily basis, Mao asked Plaintiff if he was homosexual, clearly hoping to pressure Plaintiff into having a sexual relationship with him.

76.     Mao also repeatedly threatened to rape Plaintiff, such as by antagonizing him, "I'm going to fuck you," "I'm going to fuck you until you love me," and "I'm going to make you suck my dick."

77.     On several occasions, Mao told Plaintiff "I am going to kill you."

78.     Almost every day, Mao placed his hand near Plaintiff's groin and gestured as if he was going to grab Plaintiff's genitals while making similarly disgusting comments, including, "It is not big enough because you're Jewish," "Oh, I like," "Oh, I love it baby," and "You are so sexy."

79.     These antisemitic comments were in no way isolated, but rather a regular if not daily trauma for Plaintiff.

80.     Indeed, Mao constantly yelled "Heil Hitler" and performed a Nazi salute each time Plaintiff passed him in the Restaurant, clearly seeking to intimidate Plaintiff because he is Jewish.

81.     Mao also told Plaintiff that Jewish people "need[ed] to learn" from Chinese people, as Mao believed Chinese people were superior and that "Jewish people are weak."

82.     Mao also said that Plaintiff needed to thank him because the Chinese people helped Jewish people during the Holocaust.

83.     Mao referred to Jewish people as "cheap" and "sneaky," and claimed that Jewish people cannot be trusted and that they will "stab you in the back."

84.     Needless to say, these comments were harrowing for Plaintiff to witness as a person of Jewish descent and faith.

85.     They were also ironic, as it was Mao who repeatedly threatened and attempted to attack Plaintiff—not the other way around.

86.     Indeed, on one occasion in early October 2021, Plaintiff entered the upstairs kitchen to grab an ingredient for a recipe.

87.     Mao was already in the kitchen with several other kitchen staff.

88.     After he noticed that Plaintiff had entered, Mao yelled, "I am going to kill you" and "You should watch your fucking back."

89.     Mao then stopped cooking, walked quickly toward Plaintiff, and pointed his right index finger in Plaintiff's face.

90.     Mao then repeated several times, "What the fuck are you going to do?"

91.     Plaintiff asked Mao to put his finger down and tried to move away from him.

92.     In response, Mao made a closed fist with his right hand, motioned at Plaintiff as if he was going to strike him, and said "I am going to kill you."

93.     Plaintiff then exited the kitchen.

94.     Further, around the same time, Mao cornered Plaintiff while he was standing in Spicy Moon's walk-in refrigerator, charged him while holding a clinched fist with his right hand, and tried to punch him.

95.     Mao had to be restrained by a server (whose intervention likely saved Plaintiff from serious physical harm, if not death).

96.     While he was being restrained, Mao screamed, "Let me at him" and "I am going to fucking kill you."

97.     Thankfully, Plaintiff was able to exit the refrigerator while the server held Mao back.

98.     Plaintiff then exited the Restaurant until he had been informed that Mao left for the day.

99.     Notably, Avery was present for most of the above-summarized abuse; however, she did nothing to address Mao's conduct and often laughed at Plaintiff as he was being mocked, threatened, and abused.

C.     **Plaintiff's Protected Activities and the Restaurant's Subsequent Retaliation**

100.     In early October 2021, Plaintiff met with Kwan to discuss new dishes for the Restaurant's menu.

101.     At the end of the meeting, Plaintiff complained to Kwan about Mao's repeated sexual assault, threats, and antisemitic comments.

102.     Rather than address Plaintiff's complaints, Kwan sought to silence Plaintiff by threatening to fire him.

103.     Indeed, Kwan told Plaintiff that she did not want there to be a fight in the Restaurant and, as such, "If it is this bad, then I am going to have to let one of you go."

104.     The subtext was clear: if Plaintiff could not somehow mend the fence with his antisemitic, abusive supervisor—or if he kept complaining about the discrimination and assault—as the more junior employee, he would lose his job.

105.     Plaintiff was understandably shocked that Kwan would even suggest that his enduring such egregious discrimination and abuse could somehow subject him (as opposed to Mao) to termination.

106.     Nevertheless, he remained steadfast in his resolve.

107.     The situation had escalated over several months and had gotten way out of hand.

108.     Spicy Moon needed to take action.

12

109.    Accordingly, Plaintiff told Kwan in no uncertain terms that Mao's heinous conduct was completely unacceptable and needed to be addressed.

110.    Kwan was unfazed and doubled down on her thinly veiled threat to fire Plaintiff for complaining.

111.    Despite having just been told about workplace conduct that any reasonable employer would have found shocking and abhorrent, Kwan told Plaintiff that the onus was on him to remedy the relationship with Mao.

112.    Tellingly, Kwan did not so much as reprimand Mao, let alone investigate Plaintiff's complaint or take any action to ensure that Plaintiff could work in a safe work environment.

113.    Later that same day, Plaintiff was forced to work with Mao, who continued to physically and verbally abuse him in typical fashion—unabated and perhaps even emboldened by Spicy Moon's refusal to act.

114.    After several hours of ridicule and abuse, Plaintiff became so upset that he had to step outside.

115.    Concerned for Plaintiff's well-being, Avery and a server followed him outside, at which point he told them about some of the abuse he had endured (much of which the Avery and the server had personally witnessed anyway).

116.    He then told them that Kwan had refused to intervene and that, as such, he was thinking of resigning from the Restaurant.

117.    Avery and the server begged Plaintiff not to quit, with Avery telling him, "We love you here" and "I need you here."

118.    Having now received a clear protected complaint from Plaintiff herself, Avery assured Plaintiff that Mao would not be permitted to mistreat him any longer.

119.    Plaintiff was dubious, as he knew Avery was aware of Mao's misconduct well before this conversation, but he nevertheless took her at her word.

120.    In the end, Plaintiff's misgiving turned out to be well founded.

121.    Avery did not send Mao home or take any action to make sure that Plaintiff would be safe at work.

122.    Instead, she walked Plaintiff back to the downstairs kitchen, where he was forced to work in fear that Mao would assault him again.

123.    The very next day, following more discrimination and abuse by Mao, Plaintiff visited Avery's office to complain yet again.

124.    In response, Avery offered only the same hollow promise to make sure Mao stopped, while again failing to take any action whatsoever.

125.    Two weeks later, Plaintiff complained again, as his work environment had not improved in the slightest.

126.    First, he complained to Avery, who for a third time assured him she would address the situation but failed to take any meaningful steps to do so.

127.    Thereafter, he complained to Kwan for a second time.

128.    Kwan responded that she would "fix" the situation and abruptly walked away.

**D.    Retaliatory Termination of Plaintiff's Employment**

129.    Over the next several weeks, Plaintiff continued to make protected complaints to Kwan and Avery, including complaining to Kwan on November 4, 2021.

130.    Characteristically, they both placated him with empty assurances that they would remedy the situation, even though they clearly had no plans to do so.

131.    On November 8, 2021—just four days after Plaintiff's most recent complaint—Kwan met with Plaintiff outside of the Restaurant, where she informed him that Spicy Moon was terminating his employment, effective immediately.

132.    Kwan claimed that Spicy Moon would be outsourcing food preparation going forward and that, as such, his services were no longer needed.

133.    However, since firing Plaintiff, Spicy Moon has been forced to alter or remove several dishes from its menu because Plaintiff was the only Chef that could prepare them.

134.    Also, several Spicy Moon employees have contacted Plaintiff asking for advice on how to make certain dishes.

135.    Put simply, Kwan's claim that Spicy Moon would be outsourcing Plaintiff's services going forward was transparently pretext for an unlawful motive—and especially thin pretext at that.

136.    Indeed, the suggestion that a restaurant would be "outsourcing" food preparation is facially absurd.

137.    The true reason for Plaintiff's unceremonious firing is obvious from the circumstances.

138.    Spicy Moon was unwilling to take the steps necessary to protect Plaintiff against Mao's sexual harassment, assault, and antisemitic attacks and had become fed up with Plaintiff's refusal to suffer in silence.

**E.    Wage Violations**

139.    Throughout the statutory period, Defendants also committed a litany of wage violations with respect to the Back-of-House Employees—a group that included Plaintiff from the

time he was assigned to the role of Preparation Cook in or around September 2021 through the termination of Plaintiff's employment.

140.    Throughout Plaintiff's employment, Defendants paid him a flat salary of $85,000, even after he was assigned to the role of Preparation Cook in or around September 2021.

141.    As noted above, Plaintiff typically worked Sunday through Saturday.

142.    Defendants established the Friday following each workweek as Plaintiff's and all other Back-of-House Employees' regularly scheduled payday.

143.    However, Defendants often failed to pay Plaintiff and other Back-of-House Employees on their regularly scheduled payday, resulting in Plaintiff and other Back-of-House Employees suffering concrete harm.

144.    Specifically, each instance where Defendants failed to timely pay them, Plaintiff and other Back-of-House Employees were: (i) deprived of money to which they had a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) otherwise unable to use their wages to pay bills and satisfy other financial obligations.

145.    By way of example only, Plaintiff was unable to timely make rent payments in or around 2021 because Defendants failed to provided Plaintiff with all of his earned wages on his regularly scheduled paydays.

146.    Given that Plaintiff worked an average of approximately 119 hours per week, Plaintiff's effective hourly rate during his time at Spicy Moon at all times fell below the applicable State minimum wage rate.

147.    Plaintiff also worked 10 or more hours during most if not all of his workdays at Spicy Moon.

148.    Nevertheless, Defendants never paid Plaintiff an additional hour of Spread of Hours pay for each such workday.

149.    Further, Defendants never paid Plaintiff overtime compensation for any hours worked in excess of 40 hours in a workweek after he took on the role of Preparation Cook.

150.    By way of example, from October 4, 2021 to October 10, 2021, Plaintiff worked approximately 126 hours.

151.    As such, Plaintiff should have earned at least $600[1] in regular pay and $1,935[2] in overtime pay over this one-week period.

152.    Moreover, because each of Plaintiff's seven shifts during this one-week period lasted 10 or more hours, Defendants should have paid him an additional $105[3] in Spread of Hours pay.

153.    However, Defendants paid Plaintiff only $1,633.62.  Ex. A.

154.    Additionally, Defendants never provided Plaintiff with a Notice of Pay Rate or accurate wage statements.

155.    Throughout the relevant time period, Plaintiff spoke with numerous other Back-of-House Employees about their compensation, and each confirmed that Defendants never furnished them with a Notice of Pay Rate or accurate wage statements to them personally or to any other Back-of-House Employees.

156.    As a result of Defendants' failure to provide them with a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiff and other Back-of-House

---

[1] 40 hours x $15 per hour.
[2] 86 hours x $22.50 per hour.
[3] 7 hours x $15 per hour.

Employees were prevented from: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

157.    Through conversations with other Back-of-House Employees, Plaintiff has also learned that they were paid in a substantially similar manner to him.

158.    For example, Plaintiff has spoken with two Line Chefs, one of whom was never paid overtime.

159.    The other Line Chef was paid neither minimum wages nor overtime, and also never received Spread of Hours pay.

160.    Plaintiff also spoke with a Dishwasher who was not paid minimum wages, overtime, or Spread of Hours pay.

161.    Lastly, Plaintiff spoke with a Preparation Cook, who, while paid above the minimum wage (and thus not entitled to Spread of Hours pay), was never paid overtime.

162.    Of note, Defendants paid many of these employees either partially or entirely in cash, presumably to conceal their unlawful wage practices.

163.    Further, Defendants often failed to pay these Back-of-House Employees on or before their regularly scheduled payday.

### FLSA COLLECTIVE ACTION ALLEGATIONS

164.    Plaintiff brings his FLSA claims as a collective action on behalf of himself and all other similarly situated persons who have been employed by Spicy Moon as Back-of-House Employees at any time during the full statute of limitations period (the "FLSA Collective").

165.    The FLSA Collective does not include Mao, who is overtime-exempt based on his job duties as Executive Head Chef.

166.    At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' policy and practice of: (i) failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing and refusing to timely pay all wages owed on or before their regularly scheduled paydays.

167.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that Plaintiff and the members of the FLSA Collective are not exempt from the protections of the FLSA.

168.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

169.    As a result of their unlawful conduct, Defendants are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid and late wages, with interest, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

170.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 50 members of the FLSA Collective.

171.    Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

172.    Accordingly, the Court should require Defendants to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA

Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

173.    Plaintiff brings this action, in part, as a class action under the NYLL, as well as all applicable regulations thereunder.

**A.    Class and Subclass Definitions**

174.    Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and all other similarly situated persons who have been employed by Spicy Moon as Back-of-House Employees at any time during the full statute of limitations period (the "Class").

175.    Plaintiff alleges, on behalf of himself and the Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek; (ii) failing and refusing to timely pay all wages owed on or before their regularly scheduled paydays; (iii) failing to furnish Notices of Pay Rate; and (iv) failing to furnish accurate wage statements.

176.    Plaintiff also seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and all other similarly situated persons who have been employed by Spicy Moon as Back-of-House Employees at any time during the full statute of limitations period and were paid at or below the applicable State minimum wage rate of $15 per hour (the "Subclass").

177.    In addition to and cumulatively with his allegations on behalf of himself and the Class, Plaintiff alleges, on behalf of himself and the Subclass, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay hourly wages at or above the applicable State minimum wage rate; the State minimum wage for all hours worked in excess of 40 hours per week; and (ii) failing to tender Spread of Hours pay for each workday of 10 or more hours.

178.    Plaintiff, the Class, and the Subclass have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

179.    The wage practices described herein are part of Defendants' normal course of conduct.

180.    Pursuant to FRCP 23, Plaintiff's NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class and/or Subclass.

**B.     Numerosity and Impracticability of Joinder**

181.    The members of the Class and Subclass are so numerous that joinder is impracticable.

182.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 100 members of the Class and approximately 50 members of the Subclass.

183.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.     Common Questions of Law and Fact**

184.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass and predominate over any questions only affecting the members of the Class and Subclass individually.

185.    Indeed, there are few, if any, purely individual issues in this action.

186.    The questions of law and fact common to Plaintiff and the Class include, without limitation:

(a)    Whether the Defendants failed to pay Plaintiff and the Class all overtime wages owed;

(b)    Whether Defendants failed to timely pay Plaintiff and the Class their wages;

(c)    Whether Defendants failed to provide Plaintiff and the Class with Notices of Pay Rate;

(d)    Whether Defendants failed to furnish accurate wage statements to Plaintiff and the Class; and

(e)    Whether Plaintiff and the Class are entitled to liquidated damages and injunctive relief.

187.    In addition to the foregoing, questions of law and fact common to Plaintiff and the Subclass include, without limitation:

(a)    Whether the Defendants failed to pay Plaintiff and the Subclass at or above the applicable State minimum wage rate; and

(b)    Whether Defendants failed to pay Plaintiff an additional hour of Spread of Hours pay for each workday of 10 or more hours.

188.    Therefore, the commonality requirement of FRCP 23(a) is satisfied.

**D.**    **Typicality of Claims and Relief Sought**

189.    Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent.

190.    Plaintiff, the Class, and the Subclass work, or have worked, for Spicy Moon and are, or were, subject to the same compensation policies and practices.

191.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are typical of Defendants' treatment of the Class and Subclass.

192.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.**    **Adequacy of Representation**

193.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass because his interests are coextensive and aligned with those of the Class and Subclass.

194.    Plaintiff has no interests adverse to the Class and Subclass he seeks to represent.

195.    Plaintiff is willing and able to represent the Class and Subclass as fairly and vigorously as he pursues his similar individual claims.

196.    Plaintiff has retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

197.    The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual, Class, and Subclass claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.    Requirements of FRCP 23(b)(1)**

198.    Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

199.    Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class, and the Subclass.

200.    By filing this Complaint, Plaintiff preserves the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

201.    Therefore, not certifying the Class and Subclass would substantially impair and/or impede the ability of the members thereof to protect their interests.

**G.    Requirements of FRCP 23(b)(2)**

202.    Defendants have acted on grounds, described herein, generally applicable to Plaintiff and the Class by denying Plaintiff and the Class overtime wages, failing to pay wages on time, failing to furnish Notices of Pay Rate, and failing to furnish accurate wage statements.

203.     Defendants have acted on grounds, described herein, generally applicable to Plaintiff and the Subclass by denying Plaintiff and the Subclass overtime wages, failing to pay wages on time, failing to furnish Notices of Pay Rate, failing to furnish accurate wage statements, failing to pay them at or above the applicable State minimum wage rate, and failing to tender Spread of Hours pay.

204.     These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff, the Class, and the Subclass as a whole.

205.     Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, the wages detailed herein, timely payment of the same, and the notices detailed herein.

206.     Declaratory and injunctive relief are the factual and legal predicates for Plaintiff, the Class, and the Subclass' entitlement to monetary and non-monetary remedies for such wage violations.

207.     Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.      Requirements of FRCP 23(b)(3)**

208.     The common issues of fact and law affecting Plaintiff's, the Class's, and the Subclass's claims—including, without limitation, the common issues identified above—predominate over issues affecting only individual claims.

209.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's, the Class's, and the Subclass's claims.

210.    The cost of proving Defendants' pattern and practice of denying wages, timely payment of the same, and required notices makes it impractical for the members of the Class and Subclass to pursue their claims individually.

211.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class and Subclass (*e.g.*, they must have worked for Spicy Moon during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF TITLE VII: DISCRIMINATION**
(***Against Defendant Spicy Moon***)

212.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

213.    During the full statutory period, Plaintiff was protected by the provisions of the Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

214.    During the full statutory period, Spicy Moon was subject to the provisions of the Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

215.    As set forth above, Spicy Moon discriminated against Plaintiff on the basis of his sex, gender, race, and religion in violation of Title VII by, *inter alia*, denying him equal terms and conditions of employment because of his sex, gender, race, and religion, terminating his employment, and subjecting him to a hostile work environment.

216.    Spicy Moon's unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

217.     As a direct and proximate result of Spicy Moon's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

218.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF TITLE VII: RETALIATION**
(*Against Defendant Spicy Moon*)

219.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

220.     During the full statutory period, Plaintiff was protected by the provisions of the Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

221.     During the full statutory period, Spicy Moon was subject to the provisions of the Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

222.     As set forth above, Plaintiff engaged in protected activities by, *inter alia*, lodging multiple complaints of sex, gender, race, and religious discrimination and sexual harassment throughout his employment.

223.     Spicy Moon retaliated against Plaintiff for his protected activities in violation of Title VII by, *inter alia*, terminating his employment.

224.     Defendants' unlawful and retaliatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

225.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

226.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: DISCRIMINATION
### (*Against All Defendants*)

227.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

228.     During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

229.     During the full statutory period, Defendants were subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

230.     As set forth above, Defendants discriminated against Plaintiff on the basis of his sex in violation of the NYSHRL, by, *inter alia*, denying him equal terms and conditions of employment because of his sex, gender, race, and religion, terminating his employment, and subjecting him to a hostile work environment.

231.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

232.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

233.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: RETALIATION
### (*Against All Defendants*)

234.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

235.    During the full statutory period, Plaintiff was protected by the provisions of NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

236.    During the full statutory period, Defendants were subject to the provisions of NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

237.    As set forth above, Plaintiff engaged in protected activities by, inter alia, lodging multiple complaints of sex, gender, race, and religious discrimination and sexual harassment throughout his employment.

238.    Defendants retaliated against Plaintiff for his protected activities in violation of the NYSHRL by, *inter alia*, terminating his employment.

239.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

240.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

241.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: AIDING AND ABETTING
### *(Against Defendants Kwan, Avery, and Mao)*

242.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

243.    During the full statutory period, Plaintiff was protected by the provisions of NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

244.    During the full statutory period, Defendants Kwan, Avery, and Mao were subject to the provisions of NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

245.    Defendants Kwan, Avery, and Mao knowingly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYSHRL by, *inter alia*, denying him equal terms and conditions of employment because of his sex, gender, race, and religion and supporting the termination of his employment.

246.    Defendants Kwan, Avery, and Mao's unlawful conduct was intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

247.    As a direct and proximate result of Defendants Kwan, Avery, and Mao's unlawful conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

248.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: DISCRIMINATION
### (*Against All Defendants*)

249.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

250.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

251.    During the full statutory period, Defendants were subject to the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

252.    As set forth above, Defendants discriminated against Plaintiff on the basis of his sex in violation of the NYCHRL, by, *inter alia*, denying him equal terms and conditions of employment because of his sex, gender, race, and religion, terminating his employment, and subjecting him to a hostile work environment.

253.    Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

254.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

255.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: RETALIATION
### (*Against All Defendants*)

256.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

257.    During the full statutory period, Plaintiff was protected by the provisions of NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

258.    During the full statutory period, Defendants were subject to the provisions of NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

259.    As set forth above, Plaintiff engaged in protected activities by, *inter alia*, lodging multiple complaints of sex, gender, race, and religious discrimination and sexual harassment throughout his employment.

260.    Defendants retaliated against Plaintiff for his protected activities in violation of the NYCHRL by, *inter alia*, terminating his employment.

261.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

262.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

263.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: AIDING AND ABETTING
### *(Against Defendants Kwan, Avery, and Mao)*

264.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

265.    During the full statutory period, Plaintiff was protected by the provisions of NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

266.     During the full statutory period, Defendants Kwan, Avery, and Mao were subject to the provisions of NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

267.     Defendants Kwan, Avery, and Mao knowingly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYCHRL by, *inter alia*, denying him equal terms and conditions of employment because of his sex, gender, race, and religion and supporting the termination of his employment.

268.     Defendants Kwan, Avery, and Mao's unlawful conduct was intentional, done with malice, and showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

269.     As a direct and proximate result of Defendants Kwan, Avery, and Mao's unlawful conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law.

270.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### NINTH CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME
#### *(On Behalf of Plaintiff and the FLSA Collective)*

271.     Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

272.     During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

273.     The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

274.     Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them overtime wages under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

275.     During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

276.     As a result of Defendants' failures to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

277.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

278.     Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiff and the FLSA Collective)*

279.     Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

280.     During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and all applicable regulations thereunder.

281.     The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

282.     Plaintiff and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

283.     During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

284.     As a result of Defendants' failure to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

285.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

286.     Defendants' violations of the FLSA have significantly harmed Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME
#### (*On Behalf of Plaintiff and the Class*)

287.     Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

288.     During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

289.     The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

290.     Plaintiff and the Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

291.     During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

292.     As a result of Defendants' failure to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

293.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

294.     Defendants' violation of the NYLL has significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### TWELFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
### *(On Behalf of Plaintiff and the Class)*

295.     Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

296.     During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

297.    The NYLL requires covered employers, including Defendants, to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

298.    Plaintiff and the Class were not exempt from the requirement that Defendants timely pay them their wages.

299.    Throughout the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

300.    As a result of Defendants' failure to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

301.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

302.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRTEENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE
#### *(On Behalf of Plaintiff and the Class)*

303.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

304.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

305.    The NYLL requires covered employers, including Defendants, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195.

306.    Plaintiff and the Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

307.    During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the Class.

308.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiff and the Class, Defendants have violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

309.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the Class in accordance with the NYLL.

310.    Defendants' violations of the NYLL entitle Plaintiff and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## FOURTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS
### (On Behalf of Plaintiff and the Class)

311.   Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

312.   During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

313.   The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  NYLL § 195.

314.   Plaintiff and the Class were not exempt from the requirement that Defendants furnish them proper wage statements.

315.   During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiff and the Class.

316.   As a result of Defendants' failure to furnish accurate wage statements to Plaintiff and the Class, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

317.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiff and the Class in accordance with the NYLL.

318.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### FIFTEENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGES
#### (On Behalf of Plaintiff and the Subclass)

319.     Plaintiff, on behalf of himself and the Subclass, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

320.     During the full statutory period, Plaintiff and the Subclass were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

321.     The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

322.     Plaintiff and the Subclass were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

323.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the Subclass at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

324.     As a result of Defendants' failure to compensate Plaintiff and the Subclass at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

325.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Subclass in accordance with the NYLL.

326.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the Subclass and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### SIXTEENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY SPREAD OF HOURS WAGES
#### (On Behalf of Plaintiff and the Subclass)

327.     Plaintiff, on behalf of himself and the Subclass, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

328.     During the full statutory period, Plaintiff and the Subclass were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

329.     The NYLL requires covered employers, including Defendants, to pay employees who are compensated at or below the applicable State minimum wage rate one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's workday, or "spread of hours," exceeds ten hours.

330.     Plaintiff and the Subclass were not exempt from the requirement that Defendants provide them with Spread of Hours pay.

331.     During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Spread of Hours pay to Plaintiff and the Subclass.

332.     As a result of Defendants' failure to furnish Spread of Hours pay to Plaintiff and the Subclass, Defendants have violated the NYLL and/or applicable regulations thereunder.

333.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the Subclass and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, the Class, and the Subclass, respectfully requests that this Court:

A.     Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.     Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Grant Plaintiff an award of damages, in an amount to be determined after a trial, to compensate him for all non-monetary and/or compensatory damages he has suffered, including, *inter alia*, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

D.     Grant Plaintiff an award of damages, in an amount to be determined after a trial, for any and all other monetary and/or non-monetary losses he has suffered;

E.     Grant Plaintiff an award of prejudgment interest on the damages he is awarded to the greatest extent permitted by law;

F.     Grant Plaintiff an award of punitive damages in an amount to be determined after a trial;

G.     Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

H.     Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

I.     Equitably toll the statute of limitations for all members of the FLSA Collective from the date of this filing until they are provided notice of this instant action and opportunity to join the same;

J.     Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the Class and Subclass, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

K.     Designate Plaintiff as the representative of the Class and Subclass, and his counsel of record as class counsel;

L.     Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

M.     Determine the damages sustained by Plaintiff, the Class, and the Subclass as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiff, the Class, and the Subclass, plus such pre-judgment and post-judgment interest as may be allowed by law;

N.      Award Plaintiff, the FLSA Collective, the Class, and the Subclass an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

O.      Award Plaintiff, the FLSA Collective, the Class, and the Subclass their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

P.      Grant Plaintiff, Plaintiff, the FLSA Collective, the Class, and the Subclass such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the FLSA Collective, the Class, and the Subclass, hereby demands a trial by jury on all issues of fact and damages.

Dated: November 23, 2022  
New York, New York

**FARUQI & FARUQI, LLP**

By:  */s/ Taylor J. Crabill*  
Alex J. Hartzband  
Taylor J. Crabill

685 Third Avenue, 26th Floor  
New York, New York 10017  
Telephone: 212-983-9330  
Facsimile: 212-983-9331  
ahartzband@faruqilaw.com  
tcrabill@faruqilaw.com

*Attorneys for Plaintiff, the proposed FLSA Collective, the proposed Class, and the proposed Subclass*