



71-01 Austin Street
Forest Hills, NY 11375
727-335-1030
crabilllawfirm.com

**Taylor J. Crabill**
tcrabill@crabilllawfirm.com

March 13, 2025

**VIA ECF**

The Honorable Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Lipstein v. 20X Hospitality, LLC d/b/a Spicy Moon., et al.*;
Civil Action No. 22-cv-4812-DEH (E.D.N.Y)

Dear Judge Ho:

We represent Plaintiff Milan Lipstein ("Plaintiff") and write pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's January 17, 2025 Order to respectfully request approval of the parties' settlement (the "Settlement"), as set forth in the parties' Settlement Agreement, as well as Plaintiff's counsel's reasonable attorneys' fees and costs. *See* Declaration of Taylor J. Crabill ("Crabill Decl."), Exhibit A (the "Agreement").[1] If approved, the Settlement will fully and finally resolve Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff files this application with the consent of Defendants 20X Hospitality LLC d/b/a Spicy Moon ("Spicy Moon" or the "Restaurant"), June Kwan ("Kwan"), Joanna Avery ("Avery"), and Yidi Mao a/k/a Kenny Mao ("Mao") (together, "Defendants").

As detailed below, the Settlement memorialized in the Agreement is fair and reasonable under each of the five so-called "*Wolinsky* factors" (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with each of the admonitions set forth by the Second Circuit in *Cheeks*. *See Cheeks,* 796 F.3d at 206.

## I. PLAINTIFF'S ALLEGATIONS, WHICH DEFENDANTS VEHEMENTLY DENY

### A. Background

On January 5, 2021, Plaintiff joined Spicy Moon as the Executive Head Chef. *See* ECF No. 53 ("SAC") ¶ 46. In that role, Plaintiff was responsible for, *inter alia*, creating dishes for Spicy Moon's menu, managing the Restaurant's kitchen staff, preparing dishes for customers, and maintaining the Restaurant's inventory. *Id.* ¶ 48. In September 2021, Plaintiff alleges that he was

[1] Unless otherwise noted, all exhibits to the Crabill Decl. are hereinafter cited as "Ex. __."





demoted to Preparation Cook and reported to Mao, the newly hired Executive Head Chef. *Id.* ¶¶ 62-66. Plaintiff worked as a Preparation Cook until Defendants fired him on November 8, 2021. *See id.* ¶ 131.

**B. Wage Violations**

i. Payment of a Flat Rate, Resulting in Denial of Minimum Wages, Overtime, and Spread of Hours Pay

Plaintiff alleges that Defendants paid him a flat salary of $85,000 during his employment with Defendants, even after he was assigned to be a Preparation Cook around September 2021. *Id.* ¶ 140. During his employment, Plaintiff typically worked Sunday through Saturday and averaged approximately 119 hours per week. *Id.* ¶¶ 141, 146. As a result, Plaintiff's effective hourly rate during his time at Spicy Moon fell below the applicable New York State minimum wage of $15 per hour ($85,000 salary ÷ 52 weeks = $1,634.62 per week; $1,634.62 ÷ 119 hours = $13.74 per hour). *See id.* ¶ 146.

Also, Plaintiff asserts that Defendants denied him overtime compensation for hours worked in excess of 40 hours in a workweek after he took on the Preparation Cook role, instead paying him on a salary basis without accounting for overtime. *Id.* ¶ 149-53. Further, Plaintiff alleges that regularly worked shifts of 10 or more hours as a Preparation Cook. *Id.* ¶ 147. However, according to Plaintiff, Defendants never paid Plaintiff an additional hour of "spread of hours" pay at the applicable State minimum wage rate for each such shift. *Id.* ¶ 148.

ii. Late Payment of Wages and Violations of NYLL § 195

Plaintiff alleges Defendants failed to pay him all of his wages on or before his regularly scheduled paydays. *Id.* ¶ 141-43. Also, Plaintiff contends that Defendants never provided Plaintiff with a Notice of Pay Rate or accurate wage statements. *Id.* ¶ 154.

## II. PROCEDURAL HISTORY

On June 8, 2022, Plaintiff initiated this action by filing a Collective and Class Action Complaint alleging that Defendants violated FLSA and the New York Labor Law ("NYLL") by failing to properly pay him minimum and overtime wages, failing to pay him spread of hours wages, failing to timely pay him earned wages, and failing to furnish him with a Notice of Pay Rate and accurate wage statements. *See* ECF No. 1; Crabill Decl. ¶ 10. On November 23, 2022, Plaintiff filed the Second Amended Complaint asserting nearly identical allegations to those asserted in the Complaint. *See* ECF No. 1, SAC; Crabill Decl. ¶ 11. On October 10, 2023, Defendants filed an Answer to the SAC, denying all liability for Plaintiff's claims, and asserting several affirmative defenses. *See* ECF No. 78; Crabill Decl. ¶ 12.

To help the parties reach a fair and reasonable settlement, counsel conducted a detailed investigation and review of evidence. *Id.* ¶ 13. This included exchanging payroll records, earnings statements, and text messages. *Id.* ¶ 14. The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiff's claims and Defendants' defenses, and exchanged case law





supporting their respective positions. *Id.* ¶ 15. Further, Plaintiff's counsel interviewed Plaintiff and analyzed documents related to his wage claims. *Id.* ¶ 16. Plaintiff's counsel carefully analyzed different ways to calculate damages based on various possible outcomes in this case. *Id.* ¶ 17. Based on counsel's detailed interviews, investigations, and analysis of, *inter alia*, payroll records, counsel calculated Plaintiff's wage damages to be $25,433.01. *Id.* ¶ 18.

On April 26, 2023, the parties participated in a full day mediation with highly regarded mediator Kristen Leibensperger, Esq., but were unable to settle the case. *Id.* ¶ 19. The parties then continued to litigate this case for nearly two years, engaging in extensive electronic discovery as well as conducting the deposition of Plaintiff. Ultimately, prior to the close of discovery and Defendants' filing of a potential motion for summary judgment, the parties were able to resolve Plaintiff's FLSA claims for a sum of $5,000 on the terms set forth in the Agreement. *Id.* ¶ 20; *see also* Ex. A.

## III. <u>THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND CONSISTENT WITH *CHEEKS*</u>

Plaintiff submits that this Settlement is fair and reasonable as it provides for a 20% recovery of all his best-case scenario damages for unpaid wages, including liquidated damages, prejudgment interest, and statutory damages for Notice of Pay Rate and wage statement violations—even assuming all factual and legal assumptions are made in Plaintiff's favor. Crabill Decl. ¶ 21. Indeed, this assumes that Plaintiff prevails on each of his claims and Defendants lose on all their defenses. Crabill Decl. ¶ 22.

To assess the reasonableness of the Settlement, courts consider the totality of the circumstances including examining the five *Wolinsky* factors: (i) Plaintiff's range of possible recovery; (ii) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (iii) the seriousness of the litigation risks faced by the parties; (iv) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (v) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks*—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *See Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-cv-2824 (SIL), 2015 WL 655-560, at *1 (E.D.N.Y. Oct. 28, 2015) (summarizing the *Cheeks* admonitions).

### A. <u>Plaintiff Will Receive a Significant Portion of His Maximum Possible Recovery Under the Settlement</u>

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as it provides Plaintiff with a substantial portion of the maximum possible recovery that he could obtain if he litigated this matter through summary judgment and/or trial. Crabill Decl. ¶ 23. Indeed, the Settlement results in Plaintiff receiving 20% of all possible wage damages—including economic damages, liquidated damages, prejudgment interest, and statutory damages (for the notice and wage statement violations). *Id.* ¶ 24.





This recovery reflects a reasonable compromise and exceeds recovery percentages recently approved in other wage-and-hour settlements within this Circuit. *See Cohetero v. Stone & Tile, Inc.*, No. 16-cv-4420 (KAM)(SMG), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation."); *see also Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354-(LEK/ATB), ECF Nos. 104-1 at 14; 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Felix v. Breakroom Burgers & Tacos*, No. 15-cv-3531 (PAE), 2016 WL 3791149, at *1-2 (S.D.N.Y. Mar. 8, 2016) (finding a recovery figure of 37.4% to be reasonable "[i]n light of [] litigation risks[.]"); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

To determine Plaintiff's best-case scenario, Plaintiffs' counsel analyzed and evaluated the merits of Plaintiff's claims. Crabill Decl. ¶ 25. Plaintiff's counsel conducted extensive interviews with Plaintiff and reviewed documents obtained from both Plaintiff and Defendants, including payroll documents, earnings statements, and text messages. *Id.* ¶ 26. Based on this analysis and investigation, Plaintiff's counsel analyzed the strengths and weaknesses of Plaintiff's claims and the range of possible recoveries. *Id.* ¶ 27.

With respect to Plaintiffs' FLSA and NYLL claims, Plaintiff alleges that Defendants failed to pay him his minimum and overtime wages, failed to timely pay him his earned wages, and failed to pay him spread-of-hours wages. SAC ¶¶ 139-63; Crabill Decl. ¶ 28. Additionally, Plaintiff alleges that Defendants never provided him with a Notice of Pay Rate or accurate wage statements during the statutory period. SAC ¶ 154; Crabill Decl. ¶ 29.

The Defendants vehemently disagree with Plaintiff's arguments, the damages he is claiming, and the assumptions behind his claims and calculations. Crabill Decl. ¶ 30. Specifically, Defendants dispute the number of hours Plaintiff worked, whether Plaintiff was exempt under the FLSA and NYLL, and whether Plaintiff is entitled to statutory damages for notice violations. *Id.* ¶ 31. If the parties did not settle, Defendants intended to file a motion for summary judgment to dismiss the matter in its entirety.

Both sides strongly disagree on these issues and have had many discussions about the legal and factual arguments supporting their claims and defenses. *Id.* ¶ 33. They held several phone conferences to go over the facts and law behind their positions. *Id.* ¶ 34. The parties agree that these issues require a detailed review of Plaintiff's pay, hours worked, and job duties. *Id.* ¶ 35. This includes evaluating the Plaintiff's deposition testimony about how many hours he worked each day and how much he was paid. *Id.* ¶ 36. The parties also agree that these issues likely require determining which witnesses are credible, which would play a key role in deciding liability and damages. *Id.* ¶ 37. Because the case involved complex factual disputes, if it had not been settled, it likely would have proceeded with the full briefing of a motion for summary judgment, and to trial, if the motion for summary judgment did not fully dismiss the lawsuit. *Id.* ¶ 38.

Making all assumptions in his favor, Plaintiff asserts that his damages for all unpaid wages, including minimum and overtime wages, spread of hours pay, liquidated damages, prejudgment





interest, and statutory damages for notice violations amount to $25,433.01. *Id.* ¶ 39. This Settlement of $5,000 provides Plaintiffs with a 20% recovery of all such best-case scenario damages. *Id.* ¶ 40.

Because this case involves complicated facts and there is a chance that the Defendants could win on at least some of their arguments, Plaintiff's counsel respectfully submits that the Settlement is a large portion of the highest amount the Plaintiff could have won if the case went to summary judgment or trial.

**B. <u>The Settlement Helps Both Sides Avoid the Challenges of Proving Their Claims and Defenses and the Risks of Continuing the Lawsuit</u>**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of discovery, motion practice, and the risk of a lengthy, fact-specific trial. Courts recognize that cases involving unpaid wages are complex and require extensive evidence, making it difficult to prove each side's claims and defenses, which supports approving the Settlement. *See, e.g.*, *Long v. HSBC USA Inc.*, No. 14-cv-6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the . . . amount of unpaid . . . wages[.]"); *Mills v. Capital One, N.A.*, No. 14 Civ. 1937(HBP), 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) (recognizing unpaid wage claims involve fact-intensive claims and defenses that present risks, including plaintiff's potential inability to prove unpaid wage claims).

This challenge is even greater because both sides strongly disagree on how many hours Plaintiff worked each day. Crabill Decl. ¶¶ 41-42. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiff[]." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive").

Since this case involves complicated factual issues, both sides have avoided the costs and risks of continuing the lawsuit, meeting the second and third factors outlined in *Wolinsky*.

**C. <u>The Settlement Was Reached Through Fair Negotiations Between Experienced Lawyers, With No Risk of Fraud or Unfair Deals</u>**

The fourth and fifth factors—whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also show that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-cv-3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which





were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this action have lawyers who are experienced in wage-and-hour and employment disputes. Crabill Decl. ¶ 43. The lawyers for both sides have worked hard to support their clients and reach a fair agreement. Crabill Decl. ¶ 44.

Significantly, on April 26, 2023, the parties took part in a full-day mediation session with the highly respected mediator, Kristen Leibensperger, Esq. *Id.* ¶¶ 19-20. The case history, extensive exchange of discovery, motion practice, and litigation process over the course of several years show that counsel for the parties negotiated at arm's-length, with no chance of fraud or collusion. *See Hernandez v. Anjost Corp.*, No. 11-cv-1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (quoting *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011); *Vasquez v. TGD Grp., Inc.*, No. 14-cv-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (same).

Further, the Settlement does not contain provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

The Agreement does not contain any terms that would prevent the Court approving it. For example, the Agreement does not contain a broad release or a confidentiality provision and allows Plaintiff to openly and freely discuss his employment experience, lawsuit, claims, and this Settlement with anyone. *See generally* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-cv-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement that did not contain confidentiality clause).

In sum, this Settlement satisfies the *Wolinsky* factors and Plaintiff respectfully submits that it should be approved.





## IV. PLAINTIFFS' PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiff requests that the Court approve his counsel's fees of $1,666.50, which is one-third of the total payment under the Settlement. Crabill Decl. ¶ 45; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18-cv-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 5.8% of Plaintiff's counsel's lodestar of $28,500 in this action and, as such, is both fair and reasonable. Crabill Decl. ¶ 46.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit. *See, e.g., Flores v. Anjost Corp.*, No. 11-cv-1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Constr. Mgmt., Inc.*, No. 16-cv-5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05-cv-3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, No. 10-cv-1145 (KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-cv-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of March 13, 2025, Plaintiff's counsel has billed 57 hours on this matter, amounting to $28,500 in fees if calculated pursuant to the lodestar. *See* Crabill Decl. ¶ 47; Ex. B (Crabill Firm contemporaneous billing records). The lodestar is calculated based on comparable hourly rates for Plaintiff's counsel that have been approved by other courts in the Second Circuit and across the country. Crabill Decl. ¶ 56-57; *see, e.g., Conte v. Metro. Transp. Auth.*, 21-cv-2516, ECF No. 120 (S.D.N.Y. Sept. 14, 2023) ($575 for partner, $475 for senior associates, and $195 for paralegal); *Mercado, et al. v. Metro. Transp. Auth., et al.*, 1:20-cv-6533, ECF No. 128 at 6 (S.D.N.Y July 5, 2023) ($550 for partner, $400 for Mr. Crabill, and $175 for paralegals); *Hall v. J. Caiazzo Plumbing & Heating Corp. et al*, No. 21-cv-05416 (ENV)(SJB) (E.D.N.Y. Sep 29, 2021) ($550 for partner, $375 for Mr. Crabill, and $175 for paralegals); *Porrini v. McRizz, LLC, et al.*, No. 19-cv-03979(ARR)(RML), ECF Nos. 53-1 ¶ 61; 55 (E.D.N.Y. Jul. 10, 2019) ($550 for partner, $375 for Mr. Crabill, and $175 for paralegals); *Goins v. BB&T Securities, LLC, et al.*, No. 1:20-cv-09891, ECF No. 38 (PGG)(JLC) ($500 for partner, $350 for Mr. Crabill, and $175 for paralegals).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15-cv-5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill*





*Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). At the Crabill Firm, I charge a rate of $500 for hourly work. *Id.* ¶ 50. Working on the instant matter on a contingency basis required the Crabill Firm to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* ¶ 51. Nevertheless, Plaintiff's counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.* ¶ 52.

The requested fee award of $1,666.50 is notably less than Plaintiff's counsel's lodestar of $28,500. *Id.* ¶ 53. In other words, Plaintiff's counsel requests no multiplier whatsoever and, in fact, requests a ***negative*** multiplier. *Id.* ¶ 54. Indeed, the requested fee award is only 5.8% of Plaintiff's counsel's actual lodestar, and as such, the requested attorneys' fees are reasonable. *Id.* ¶ 55; *see, e.g.*, *Silverstein v. AllianceBernstein L.P.*, No. 09-cv-5904 (JPO), 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) ("Applying the lodestar method as a 'cross check,' the Court finds that the fee that Class Counsel seeks is reasonable and does not represent an exorbitant multiplier—indeed, there is no multiplier.") (citation omitted) (collecting cases); *Flores*, 2014 WL 321831, at *9 (same); *Diaz v. E. Locating Serv. Inc.*, No. 1:10-cv-04082-JCF, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) (same); *see also In re Blech Securities Litig.*, 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (approving one-third contingency fee because "[t]he fee requested is less than the cumulative lodestar.").

## V. CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court approve the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank the Court for its time and attention to this matter.

Respectfully Submitted,

Taylor J. Crabill